UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| ROY FRANKLIN LETNER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 1:05-CV-151 |
| | ) | *Collier/Lee* |
| WALTER HICKMAN, Meigs County Sheriff; | ) | |
| LINDA HICKMAN, Meigs County Jail | ) | **JURY DEMAND** |
| Administrator; DEBBIE ERWIN, Assistant | ) | |
| Meigs County Jail Administrator, | ) | |
| | ) | |
| Defendants. | ) | |

# **M E M O R A N D U M**

This suit arises under 42 U.S.C. § 1983. Plaintiff Roy Franklin Letner ("Letner" or "Plaintiff") complains Defendants failed to adequately treat his testicular medical condition in violation of his rights under the Eighth and Fourteenth Amendments of the United States Constitution. In addition, Plaintiff contends once he filed the complaint in this instant lawsuit Defendants began to retaliate against him.

The Court previously reserved ruling on Plaintiff's motion for injunctive relief (Court File No. 10) and Defendants Walter Hickman, Linda Hickman, and Debbie Erwin's ("Defendants") motion to dismiss (Court File No. 21). For the reasons discussed below, Plaintiff's motion for injunctive relief will be **DENIED** (Court File No. 10); Plaintiff's motion to amend the complaint (Court File No. 25) will be **DENIED as FUTILE**; Plaintiff's motion to compel (Court File No. 28) will be **DENIED**; Plaintiff's motion to amend (Court File No. 29) will be **GRANTED IN PART and DENIED IN PART**; Defendants' motion for an order of protection (Court File No. 32) will be **DENIED**; Defendants' motion to compel (Court File No. 34) will be **DENIED**; Defendants' motion to dismiss (Court File No. 21) will be **GRANTED** on different grounds than those offered by

Defendants; Defendants' second motion to dismiss (Court File No. 36) will be **DENIED as MOOT**; and Plaintiff's complaint (Court File No. 3) will be **DISMISSED**.

I.      **Non-dispositive Motions**

Pending before the Court are several motions filed by Plaintiff and Defendant which the Court will address in the order in which they were filed.

     A.      **Motion for Injunctive Relief** **(Court File No. 10)**

Plaintiff filed a motion to amend which included a request for injunctive relief (Court File No. 10). The Court previously granted the motion to the extent it was a motion to amend (Court File No. 13). Plaintiff requested an injunction to prevent Defendants from retaliating against him for pursuing this lawsuit (Court File No. 10). Plaintiff claims since he has filed the complaint in this action, Defendants have retaliated by placing him in isolation which has effectively prevented him from obtaining legal assistance to pursue this complaint (Court File No. 10).

Defendants maintain that pursuant to FEDERAL RULES OF CIVIL PROCEDURE Rule 65, the request for injunctive relief should be denied as no affidavit nor verified complaint has been filed to support the request for injunctive relief. The Court declines to address this issue since the request for injunctive relief will be denied.

Plaintiff requests injunctive relief to prevent Defendants from engaging in retaliatory conduct which Plaintiff claims Defendants have engaged in as a response to the filing of this lawsuit. The Court must consider four elements in determining whether to grant a request for injunctive relief. The Court must consider "1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; 2) whether the movant has shown that irreparable injury will

occur absent the injunction; 3) whether the preliminary injunction would harm third parties; and 4) whether the public interest would be served by issuing the preliminary injunction." *Boles v. Bradley,* 103 F.3d 128 (6th Cir. Nov. 27, 1996) (Unpublished table decision), *available in* 1996 WL 690150, at *1; *Sandison v. Michigan High School Athletic Association Inc.,* 64 F.3d 1026, 1030 (6th Cir. 1995). The movant must, at a minimum, show some likelihood of success on the merits. *Id. at *1.* Letner alleges a First Amendment retaliation claim. Specifically, he claims he was punished for exercising his constitutionally protected right of access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343 (1996). To state a retaliation claim, a complaint must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988). Letner was engaged in accessing the courts and to obtain relief he must demonstrate Defendants impaired his access to the courts in that Defendants' conduct "would chill or silence a 'person of ordinary firmness' from future First Amendment activities." *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)).

In his motion requesting injunctive relief, Plaintiff contends Sheriff Hickman removed him from his cell block and placed him in isolation, made an unidentified threat against him personally, and restricted him from making phone calls, writing letters, and interacting with other inmates. Sheriff Hickman's affidavit reflects Letner was placed in a medical cell for further observation as a result of his request for medical care and treatment. Sheriff Hickman's affidavit also reflects he placed Plaintiff in a medical cell because it "contains additional windows which provide jail personnel improved opportunities to monitor and observe those inmates claiming to have a medical condition in comparison with the other cells in the jail" (Court File No. 21-3). Sheriff Hickman

3

avers once he received confirmation Plaintiff was not suffering from a serious medical condition, after Plaintiff stayed approximately one week in the medical cell, he removed Plaintiff from the medical cell (Court File No. 21-3).

Plaintiff has not provided any credible evidence refuting Sheriff Hickman's affidavit nor has he denied he was placed in a medical cell for closer observation. Though Plaintiff contends Defendants transferred him in retaliation for filing this lawsuit there is no proof the transfer to the medical cell was an egregious abuse of governmental power. Plaintiff has submitted no substantial probative evidence contrary to Sheriff Hickman's affidavit, nor does he contend Sheriff Hickman's affidavit is false, he has merely submitted allegations. Plaintiff is not entitled to injunctive relief merely on the basis of allegations. Moreover, Plaintiff has not demonstrated the prison officials' conduct of transferring Plaintiff to a medical cell under the circumstances of this case is "capable of deterring a person of ordinary firmness from exercising his or her right to access to courts." *Thaddeus-X,* 175 F.3d at 398. Indeed, it did not deter Plaintiff as he continued to file documents in the instant case.[1]

The proof before the Court is Plaintiff's factually unsupported allegation he was placed in isolation as retaliation for filing the instant complaint and Sheriff Hickman's affidavit reflecting, due to Plaintiff's claim of a medical condition, he transferred Plaintiff to the medical cell for closer observation. Thus, the Court finds Plaintiff has not carried his burden of demonstrating the alleged adverse action was motivated, at least in part, by the filing of the instant complaint. Indeed, the

---

[1] Plaintiff contends Sheriff Hickman transferred him to an isolation cell on June 2, 2005. The record reflects on June 13, 2005 the Court received a letter from Plaintiff dated June 9, 2005 (Court File No. 6). In addition, on June 21, 2005, the Court received a motion from Plaintiff which he signed on June 14, 2005 (Court File No. 7).

4

record reflects Plaintiff was transferred to the medical cell after the Sheriff was notified Plaintiff had a medical condition. Plaintiff is required to present significant probative evidence in support of his retaliation claims and, based on the evidence in the record, the Court finds Plaintiff has failed to present any significant probative evidence in support of his retaliation claim.

To the extent Plaintiff claims Defendants' alleged retaliatory conduct of moving Plaintiff to isolation effectively interfered with his access to court, Plaintiff has failed to demonstrate a First Amendment violation because there is no proof Plaintiff's ability to pursue this lawsuit or any other legal matter was impaired due to his transfer to the medical cell. Plaintiff filed the motion requesting injunctive relief on June 27, 2005 (Court File No. 10), and he continued to file documents in this case continuously until September 21, 2005 (Court File Nos. 11, 12, 14, 18, 19, 20, 25, 28, 29). The prison officials sustained their burden by the uncontradicted proof Plaintiff was transferred for medical observation.

Although Letner alleged Sheriff Hickman placed him in isolation and "made threats against 'his person' and restricted him from being around other inmates, writing letters, and making phone calls[,]" (Court File No. 10), he fails to provide any factual support regarding the duration and the facts surrounding the isolation and restrictions; thus, he has failed to state a constitutional violation. The uncontroverted record reflects he was placed in a medical cell for observation. Letner's placement in a medical cell does not support a constitutional claim; thus, he has not shown a strong likelihood or probability of success on the merits or provided any evidence to justify the requested relief. Consequently, as Letner is unable to demonstrate some likelihood of success on the merits of this claim, he is not entitled to injunctive relief on his claim that he was placed in isolation as retaliation.

As to Plaintiff's claim regarding lack of access to the courts, he has failed to state a claim. States have affirmative obligations to ensure prisoners and pretrial detainees meaningful access to the courts, including providing paper and pen, notarial services, stamps, and either adequate law libraries or adequate assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 824-28 (1977). It is not enough for Plaintiff to simply allege an adequate law library or some alternate form of legal assistance was not made available to him. In order for Plaintiff to prevail on his claim he was denied access to a law library or paralegal, Plaintiff must demonstrate the conduct of Defendants actually prevented his access to courts or it actually prejudiced his ability to litigate a lawsuit. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Bey v. Toombs*, 19 F.3d 1432 (6th Cir. Mar. 28, 1994) (Unpublished table decision), *available in* 1994 WL 105900, at *2.

To prove he was denied access to court, Plaintiff must show actual injury which has been defined as, "actual prejudice with respect to contemplated or existing litigation such as the inability to meet a filing deadline to present a claim." *Lewis*, 518 U.S. at 348. Even in systemic cases where prison officials have utterly denied prisoners all access to legal resources and materials, Plaintiff still must show his attempts to present a non-frivolous claim respecting his conviction or conditions of confinement were somehow impeded. *See id.* at 353 n. 4. Here, Letner claims Defendants moved Jeffery Miller, a paralegal, to another part of the jail in order to deny Plaintiff legal assistance. However, Plaintiff has failed to specifically identify any prejudice to his ability to litigate a lawsuit, rendering this claim vague and factually unsupported. *See id.* at 352-53.

Furthermore, Plaintiff does not identify any ongoing court case which was prejudiced. The Court notes the file in the present case fails to support Plaintiff's vague complaint of interference with access to court. Accordingly, this claim of being denied access to the courts does not entitle

6

Plaintiff to any injunctive relief.

Letner has not alleged any facts substantiating his claims or demonstrating a violation of his constitutional rights. Letner does not allege, nor do there appear to be, any facts to show a strong or substantial likelihood of probability of success on the merits nor do the facts support a claim of irreparable injury that would justify the imposition of injunctive relief. Consequently, Letner has failed to meet the minimum burden of showing some likelihood of success on the merits of the claims he provided to support his request for injunctive relief.

Accordingly, Letner's motion for injunctive relief (Court File No.10) will be **DENIED** since Letner has failed to provide support for any factors to favor granting injunctive relief against Defendants in this case.

    **B.**    <u>**Motion To Amend**</u> **(Court File No. 25)**

Plaintiff filed a motion he titles a motion to amend (Court File No. 25). Defendants oppose the motion (Court File Nos. 26 & 27). First Plaintiff requests the Court to order Defendants to schedule him an appointment for a scrotal ultrasound. After Dr. Preston Brown performed a scrotal ultrasound on Plaintiff on April 7, 2005, Dr. Brown referred Plaintiff to Dr. W. Bedford Waters of University Radiology for a short term sonographic re-evaluation to confirm Dr. Brown's opinion Plaintiff's condition was benign (Court File No. 25-2). Defendants have filed a letter from Dr. Waters reflecting he saw Plaintiff in his "Athens' office on June 13, 2005, with groin pain. He had no evidence of recurrent hydrocele and no acute inflammation. He was treated with anti-inflammatories and scrotal support" (Court File No. 26-2). Dr. Waters also noted there was no need for any further evaluation or urological care of Plaintiff. In addition, Dr. Waters completed a questionnaire submitted by Defendants indicating he had, for review, the April 7, 2005 scrotal

7

ultrasound report from the Athens Regional Medical Center when he examined Plaintiff on June 13, 2005 (Court File No. 26-3). After examining Plaintiff, Dr. Waters concluded neither additional diagnostic studies nor a short term sonographic re-evaluation were needed. Furthermore, Dr. Waters avers petitioner does not suffer from a serious medical condition requiring specialized medical care and treatment but he does require anti-inflammatory drugs for chronic pain (Court File No. 26-3).

Plaintiff has not refuted Dr. Waters' affidavit. Consequently, he has not demonstrated a need for a scrotal ultrasound and his request to order Defendants to schedule an appointment for a scrotal ultrasound (Court File No. 25) will be **DENIED**.

Plaintiff previously amended his complaint to add a claim he was denied requested medication (Court File No. 11). In this motion to amend (Court File No. 25), Plaintiff requests to amend his complaint to increase the amount of his damages by $1000.00 for Defendants' failure to give Plaintiff medication prescribed by his physicians.

The medical report of Dr. Brown regarding the scrotal ultrasound does not reflect any medication was prescribed (Court File No. 4). The affidavit of Defendant Debbie Erwin reflects Dr. Chin[2] instructed her on the administration of medication and she administered medication to Plaintiff. Further, she avers Plaintiff was never denied any prescription or non-prescription medications. Additionally, she avers Plaintiff refused, on occasions, to take medications prescribed by his physicians when she attempted to administer them (Court File No. 21-2). These broad and vague averments fail to identify what medications were provided and when the medications were administered.

---

[2] Although this affidavit refers to Dr. Chin, in his affidavit, Kevin Chin refers to himself as a Certified Physician Assistant.

In his affidavit, Certified Physician Assistant Kevin Chin also makes very broad and vague averments. Without any explanation, Mr. Chin avers Plaintiff has not suffered from a denial of medication. In addition, Mr. Chin contends Plaintiff's present medication consists solely of over-the-counter medications such as ibuprofen to be administered on an as-needed basis (Court File No. 21-4). Neither Ms. Erwin's affidavit nor Mr. Chin's affidavit address Plaintiff's specific allegation he requested and was denied medication prescribed by Dr. Waters on June 13, 2005 (Court File No. 11).

The records before the Court also reflect that on January 13, 2005, Plaintiff was prescribed Naprox and Tramadol; on February 3, 2005, he was prescribed Tramadol; on February 24, 2005, Plaintiff was advised to wear athletic support; and on March 26, 2005, it appears Plaintiff was prescribed some illegible medication for ten days and the Tramadol for pain (Court File No. 22-2). In addition, it appears Dr. Brown prescribed 800 mg. of Ibuprofen to be administered three times a day and Dr. Waters prescribed anti-inflammatory medicine on June 10, 2005 (Court File No. 22-2). Plaintiff has also submitted the statement of Mr. Glenn-Franklin Vanosdale, a fellow inmate, reflecting Mr. Vanosdale is given medication during the morning and evening "med. calls" and he has never observed Letner receiving any medication at those times (Court File No. 29).

Read in light most favorable to Letner, assuming he was denied medication for a serious medical need, arguably he has stated an Eighth Amendment violation. However, Plaintiff has not sued Defendants in their individual capacity, and he has failed to demonstrate an injury was caused as a result of a custom, policy, or practice of Meigs County. Indeed, Plaintiff has submitted proof that it is a custom, policy, or practice to administer medication to inmates at Meigs County Jail at least twice a day *i.e.*, Mr. Vanosdale's affidavit reflecting he is administered medication at least

9

twice a day at the Meigs County Jail. Consequently, it would be futile to permit Letner to add a claim for damages which, in any case, cannot be remedied since there is no allegation or showing any alleged injury was the result of a custom, policy, or practice of Meigs County. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978).

Next, Plaintiff requests to amend his complaint to add a claim he is unable to make copies of his legal work to provide to Defendants. If Plaintiff does not have access to a copy machine, he can duplicate his motion by hand, mark it as a copy, and mail it to Defendants or counsel for Defendants. There is no evidence Defendants have interfered with Plaintiff's access to the courts or hindered his efforts to pursue a legal claim. Consequently, he has failed to state a constitutional claim.

Finally, Plaintiff complains he has mailed letters to friends and family members but they have not received the letters. When Plaintiff informed jail personnel of this problem, Sheriff Hickman notified Plaintiff he could pay to have the mail sent certified. Plaintiff contends this is another form of retaliation against him for filing this lawsuit and requests the Court to issue an order for Defendants to refrain from mishandling his mail. Plaintiff does say when he mailed the letters, to whom he gave the letters, or how long it had been since he mailed the letters. Plaintiff has failed to provide any factual support to demonstrate there is a connection between the allegation and the conduct of Defendants. Consequently, Plaintiff has failed to state a constitutional violation.

For the reasons previously explained, Plaintiff's motion to amend the complaint (Court File No. 25) will be **DENIED as FUTILE**.

    **C.**    **Motion to Compel** (Court File No. 28)

Plaintiff has filed a document the clerk's office docketed as a motion to compel and add

party (Court File No. 28). Defendants oppose the motion (Court File No. 30). This document is simply requesting certain individuals, Dr. Waters and Officer Blake Kilpatrick, be ordered to testify at a hearing on this matter. To the extent Plaintiff is requesting Officer Blake Kilpatrick, the officer who transported Plaintiff to Dr. Waters' office, be added as a Defendant, he has failed to state a constitutional claim against Officer Kilpatrick and it would be futile to permit such an amendment. Plaintiff's request to order Dr. Waters' and Officer Kilpatrick to appear in Court is **DENIED**, as there will be no trial or hearing in this case. Accordingly, to the extent this document is a motion, it will be **DENIED** (Court File No. 28).

        **D.**      <u>**Motion to Add Documentation and/or Amend**</u> **(Court File No. 29)**

Plaintiff requests certain affidavits be filed in this case to demonstrate he has not received any medication. Plaintiff has attached a document signed by Dennis Dewitt Howard stating Mr. Howard has observed Plaintiff request medicine for pain on some unidentified dates and some unidentified person told him to address the request to Sheriff Hickman. This statement was not executed under oath. The second affidavit is signed by Glenn-Franklin Vanosdale swearing and affirming he has never seen Plaintiff receive any medication. Mr. Vanosdale avers he receives medication at the morning and evening "med. call" and he has never seen Letner receive any medication at the morning or evening "med. call" (Court File No. 29-3).

Plaintiff next complains he has not had access to legal material and, again, he complains about Jeffery Miller, a paralegal, being moved to another part of the jail. Plaintiff does not claim this has hindered his efforts to pursue a legal claim; thus, he has failed to allege a constitutional violation and allowing him to amend his complaint with this claim would be futile.

Lastly, Plaintiff complains about the jail's failure to make copies of his legal documents and

11

he claims he was unaware he was required to include a certificate of service on each document filed. As previously stated, if Plaintiff does not have access to a copy machine, he can duplicate his motion by hand, mark it as a copy, and mail it to Defendants or counsel for Defendants. Additionally, the Court has previously ordered Plaintiff to include a certificate of service on each document filed with the Court (Court File Nos. 8, 23).

Accordingly, Plaintiff's motion will be **GRANTED IN PART and DENIED IN PART**. To the extent Plaintiff requests to add the statements of two inmates to the record in this case, his motion will be **GRANTED**; to the extent he requests to amend his complaint the motion will be **DENIED** (Court File No. 29).

### E. Motion for Protective Order (Court File No. 32)

Also before the Court is Defendants' motion for Protective Order to limit discovery (Court File No. 32). Defendants' motion does not contain a certification they have conferred or attempted to confer with Plaintiff in an effort to resolve the dispute, a prerequisite to seeking court action. *See* Rule 26(c), FEDERAL RULES OF CIVIL PROCEDURE. Moreover, the dismissal of this action results in this motion being moot. Accordingly, Defendants' motion for an order of protection will be **DENIED** (Court File No. 32).

### F. Motion to Compel (Court File No. 34)

The last non-dispositive motion before the Court is Defendants' motion to compel Plaintiff to answer Interrogatories and respond to Requests for Production of Documents that were served upon Plaintiff on November 9, 2005. Although Defendants assert Plaintiff has been released from Meigs County Jail without notifying the jail or Court of his new address and Defendants have sent a copy of the motion to compel to Plaintiff at the address he gave the jail when he was booked,

12

Defendants do not assert they attempted to confer with Plaintiff at any time in an effort to secure the disclosure of the information without court action as required by Rule 37 of the FEDERAL RULES OF CIVIL PROCEDURE. Defendants' most recent motion to dismiss (Court File No. 36) reflects Plaintiff was transferred to Rhea County Jail but there is no indication Defendants attempted to contact Plaintiff at Rhea County Jail. Nevertheless, the dismissal of this action results in this motion being moot. Accordingly, Defendants motion to compel will be **DENIED** (Court File No. 34).

## II.     Standard of Review:  Motion to Dismiss

When disposing of Defendants' motion to dismiss, the Court construes all allegations of the complaint in favor of Plaintiff. *See Cooper v. Parrish*, 203 F. 3d 937, 944 (6th Cir. 2000). Dismissal "is proper when it is established beyond a doubt that Plaintiff cannot prove any set of facts consistent with the allegations that would entitle such Plaintiff to relief." *Collins v. Nagle*, 892 F.2d 489, 493 (6th Cir. 1989). The Court also screens prisoner civil rights cases pursuant to 28 U.S.C. § 1915A and 1915(e):

> ***Screening Pursuant to 28 U.S.C. §§ 1915A and 1915(e)***
>
> When screening a prisoner complaint, a district court must examine both § 1915A and § 1915(e)(2). If the civil action seeks redress from a governmental entity, officer, or employee, the district court must dismiss the complaint, or any portion of the complaint, which (a) is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (b) seeks monetary relief from a Defendant who is immune from monetary relief. 28 U.S.C. § 1915A. Should the complaint contain any allegations that do not fall within § 1915A, the district court must then examine the complaint under § 1915(e)(2). The requirements of §1915(e)(2) overlap the criteria of § 1915A. Section 1915A is restricted to prisoners who sue government entities, officers, or employees. In contrast, § 1915(e)(2) is restricted neither to actions brought by prisoners, nor to cases involving government Defendants. Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. A case that may not initially appear to meet

> §1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section. Thus, in prisoner cases, the district court must first examine a complaint under § 1915A and then review the complaint under § 1915(e)(2) before the case can proceed in due course. A district court is required to screen all civil cases brought by prisoners, regardless of whether the inmate paid the full filing fee, is a pauper, is pro se, or is represented by counsel as the statute does not differentiate between various civil actions brought by prisoners. The dismissal of a complaint under §1915(e)(2) or § 1915A does not negate a prisoner's obligation to pay the filing fee in accordance with § 1915(b)(1)- (2). See *In re Tyler*, 110 F.3d at 529-30. We make it explicit: a court's responsibility under the Prison Litigation Act is to first examine the financial status of a prisoner and make the assessment of fees. After the fees have been assessed, the merits of a complaint or appeal may be reviewed. Our mandate, however, does not prevent a district court from making the fee assessment and conducting the screening process in the same opinion or order.

*McGore v. Wrigglesworth,* 114 F.3d 601, 608 (6th Cir. 1997).

**III. Facts**

The following facts were contained in Plaintiff's complaint. In March 2005, Plaintiff reported he was suffering from pain, swelling, and discoloration due to a testicular medical condition as a result of a previous surgery performed on him on June 18, 2004. Jail Administrator Linda Hickman referred him to Mr. Chin, the jail physician assistant. Mr. Chin referred Plaintiff to Dr. Brown, the physician who had performed the June 18, 2004 surgery. Dr. Brown referred Plaintiff to Athens Hospital for x-rays or an ultrasound. Plaintiff was transported to Athens Hospital for the tests on April 8, 2005.

Plaintiff contends he was advised by Dr. Brown's office on April 12, 2005, to return to discuss the test results and receive medication. Plaintiff contends he has not been taken to Dr. Brown's office and all requests for an explanation of his test results and all requests for medication have been denied.

Letner amended his complaint and added a retaliation claim (Court File No. 10). Letner claims he was placed in isolation and denied the right to associate with other inmates, write letters, or make phone calls in retaliation for filing the instant complaint. In addition, Plaintiff contends he was denied access to legal material or legal assistance (Court File Nos. 10 and 12). In his second amendment, Plaintiff claims he was denied requested medication prescribed by Dr. Waters (Court File No. 11).

## IV.     Identity of Defendants

Plaintiff identifies Meigs County Sheriff Walter Hickman ("Sheriff Hickman"), Meigs County Jail Administrator Linda Hickman ("Hickman"), and Assistant Meigs County Jail Administrator Debbie Erwin ("Erwin") as Defendants. The complaint does not indicate whether the named Defendants are being sued in their official capacities, individual capacities, or both. A suit brought against a public, government official will not be construed as seeking damages against Defendant in his individual capacity unless such a claim for individual liability is clearly and definitely set forth in the pleading. *Pelfrey v. Chambers*, 43 F.3d 1034, 1038 (6th Cir.), *cert. denied*, 515 U.S. 1116 (1995); *Thiokol Corp. v. Department of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 383 (6th Cir. 1993); *Lovelace v. O'Hara*, 985 F.2d 847, 850 (6th Cir. 1993); *Hardin v. Straub*, 954 F.2d 1193, 1199-1200 (6th Cir. 1992); *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989); *Johnson v. Turner*, 855 F. Supp. 228, 231 (W.D. Tenn. 1994), *aff'd,* 125 F.3d 324 (6th Cir. 1997). Generally, absent any express indication Defendants are being sued in their individual capacities, the Court must assume they are being sued only in their official capacities as employees of Meigs County. *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir.), *cert. denied*, 502 U.S. 883 (1991); *Wells*, 891 F.2d at 593-94.

Although it is preferable Plaintiffs explicitly state whether a Defendant is sued in his or her individual capacity, the failure to do so is not fatal if the complaint or other filed documents provide sufficient notice to Defendants they are being sued as individuals. In *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir. 2001), the caption on Moore's complaint listed the officers' names, not their official titles; the complaint referred to the officers throughout as the "individual Defendants;" the complaint identified the officers as "acting for themselves and for the City . . .;" and Moore sought compensatory and punitive damages against each of Defendants. The Sixth Circuit stated, taken as a whole, the complaint likely provided sufficient notice to the officers that they were being sued as individuals. *Id.* at 774. However, the Sixth Circuit ruled "Moore's response to the officers' motion to dismiss clarified any remaining ambiguity: 'The individuals named are police officers who are being sued in their individual capacities for using excessive and unreasonable force while making an arrest of Plaintiff on April 7, 1996.'" *Id.* at 773, 774.

The complaint before this Court is not equivalent to the complaint in the *Moore* case. Defendants are identified by name and employment position in the caption and in the body of the complaint. Letner seeks release from incarceration and monetary damages. However, although the request for monetary damages is one factor that might place an individual on notice he is being sued in his individual capacity, that alone is not sufficient to place an official on notice he is being sued in his individual capacity. *See Shepherd v. Wellman*, 313 F.3d 963, 969 (6th Cir. 2002); *United States ex. rel. Diop v. Wayne County Community*, 242 F.Supp.2d 497 (E.D. Mich. 2003). Thus, absent any clear indication in the complaint Defendants are being sued in their individual capacities, the Court must assume they are being sued in their official capacities. *Id.* at 772.

A claim against these Defendants in their official capacities is treated as being an action

16

against Meigs County. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 237 (6th Cir. 1992). Because Defendants have been sued only in their official capacity as employees of Meigs County, the Court must proceed as if Plaintiff has in fact sued Meigs County. Therefore, in order to prevail Plaintiff must demonstrate the alleged violation of his constitutional rights resulted from acts representing official policy or custom adopted by the County. *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 690-91 (1978); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245-46 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990).

In order to prevail in an action against a Defendant in his official capacity, a Plaintiff must show, first, he has suffered harm because of a constitutional violation and second, a policy or custom of the entity– in this case, Meigs County– caused harm. *See Collins v. Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Letner must identify the policy, connect the policy to the county itself, and show the particular injury was incurred because of the execution of the policy; all of which Letner has failed to do. *See Garner v. Memphis Police Dept.* 8 F.3d 358, 363-64 (6th Cir. 1993), *cert. denied*, 510 U.S. 1177 (1994) (citation omitted).

Letner does not allege the violation of his rights resulted from any policy or custom on the part of Meigs County. Consequently, Defendants are entitled to judgment as a matter of law and their motion to dismiss will be **GRANTED** (Court File No. 21). Accordingly, Plaintiff's complaint will be **DISMISSED** (Court File No. 3) and Defendants' second motion to dismiss (Court File No. 36) will be **DENIED as MOOT**.[3]

---

[3] In their second motion to dismiss, Defendants contend Plaintiff failed to notify the Court of his address change. Consequently, it appears Letner's complaint could be dismissed for failure to prosecute and for failure to comply with this Court's order. Letner signed and dated his complaint form on page five, which included the following notice: "YOU ARE RESPONSIBLE FOR KEEPING THE COURT INFORMED IMMEDIATELY OF ANY ADDRESS CHANGES.

A judgment will enter dismissing Plaintiff's complaint in its entirety.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

FAILURE TO PROVIDE YOUR CORRECT ADDRESSES TO THIS COURT WITHIN TEN (10) DAYS FOLLOWING ANY CHANGE OF ADDRESS WILL RESULT IN THE DISMISSAL OF THIS ACTION."

On December 22, 2005, Defendants filed a motion to compel wherein they notified the Court Plaintiff had been released from the Meigs County Jail without notifying the jail or Court of his new address. Defendants asserted they served the motion to compel on Plaintiff by mail at the address provided to Defendants when Plaintiff was booked. Plaintiff has not filed a response to the motion to compel. In their most recent motion to dismiss (Court File No. 36), contrary to their previous allegation Plaintiff failed to notify the jail of his new address, Defendants assert Plaintiff was transferred from the Meigs County Jail to the Rhea County Jail on or about November 11, 2005, but they believe he has since been released. Nevertheless, it appears Plaintiff is no longer at the Meigs County Jail, the last address reflected in the Court's record. Plaintiff was required to notify the Court within ten days of any address change. Failure to notify the Court of an address change normally results in the complaint being dismissed for Plaintiffs failure to prosecute and to comply with the orders of this Court. FED. R. CIV. P. 41(b); *Jourdan v. Jabe*, 951 F.2d 108 (6th Cir. 1991). However, since the Court has dismissed the complaint on other grounds, Defendant's second motion to dismiss is moot.

18